FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

2020 SEP -2  PM 12: 37

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

**Jacksonville Division**

## AMENDED
## CIVIL RIGHTS COMPLAINT

**EDMOND ALLEN WILSON, JR.,**
**Plaintiff,**

**Vs.**                                   **CASE NUMBER: 3:20-CV-114-J-20-JBT**

**MARK S. INCH, SECRETARY**          **Demand for Jury trial. All defendants**
**FLORIDA DEPAREMENT OF**            **are sued in individual and official**
**CORRECTIONS**                       **capacity Under Color of State law.**
**DR. ERRON CAMPBELL,**
**REGIONAL MEDICAL**
**DIRECTOR, FDOC**
**DR. E.PEREZ-LUGO,**
**CORIZON LLC HEALTH CARE**
**PROVIDER,**
**CENTURION OF FLORIDA LLC,**
**HEALTH CARE PROVIDER**
**DEFENDANTS**
_____/

### ANSWER ALL OF THE FOLLOWING QUESTIONS:

I.  PLACE OF PRESENT CONFINEMENT: <u>Union Correctional Institution</u>
    <u>(UCI) P.O. Box 1000, Raiford, Florida, 32083</u>

II. EXHAUSTION OF ADMINISTRATIVE REMEDIES: Exhaustion of
    administrative remedies is required prior to pursuing a civil rights action
    regarding conditions of events in any prison, jailor detention center.  42 U.S.C.

1

§ 1997e(a).  Plaintiff is warned that any claims for which the administrative grievance process was not completed prior fining this law suit may be subject of dismissal:  See Attached Declaration.

III. PREVIOUS LAW SUITS:

A. Have you initiated other lawsuits in state court dealing with the same or similar facts involved in this action of otherwise relating to your imprisonment or conditions thereof?  Yes ( ) No. (X)

B. Have you initiated other lawsuits in <u>federal court</u> dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof?  Yes  (X) No ( )

C. If your answer to either A or B is Yes, describe each lawsuit in the space provide below,  If there is more than one lawsuit, describe all additional law suits on a separate piece of paper, using the same format as below.

1. Parties to previous lawsuit:

2. Plaintiff(s) <u>Edmond A Wilson</u>
   Defendant(s): <u>Florida Department of Corrections, et al.</u>

3. Docket Number: <u>3:18-cv-1114-J-34MCR</u>

4. Name of Judge: <u>Marcia M. Howard</u>

5. Briefly describe the facts and basis of the lawsuit.

The Defendant's custom and practice for cost conservative measures did deny and delay Plaintiff ear, nose, and throat specialist consult request for more than 2 years prescribing an **Alternative Treatment Plan** (ATP), rather than prescribing an efficacious course of treatment for the Plaintiff's serious medical needs that caused Plaintiff illness to worsen, constituted the Defendant's deliberate indifference.

The Plaintiff continues to suffer 'reoccurring' obvious facial swelling.  Periods of extreme pain in and around the right eye.  Chronic headaches, bulging of the right

2

eye and vision problems.  Plaintiff suffered infection that caused bone deterioration that degenerated so much the Plaintiff had to have reconstructive surgery (a metallic plate over the right frontal bone/frontal sinus).    Plaintiff now has facial disfigurement.

The Defendant's policy and custom and practice to save money through utilization management represents the Defendant's conscious choice to prescribe an easier non effective and less costly course of treatment for the Plaintiff's serious medical needs, which did cause the Plaintiff imminent danger of physical injury also pain and suffering.

The Defendant's denials and delays to respond effectively and objectively to Dr. Perez initial request ENT consult allowing Plaintiff to develop aspergillasis fungal infection, constituted deliberate indifference also, cruel and unusual punishment in violation of the Eight, Fourteenth Amendments.

6   Disposition (Was the case dismissed? Was it appealed? Is it still pending?):

Dismissal without prejudice

7   Approximate filing date:

8   Approximate disposition date: October 22,2018

D.      Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted?  If so, identify these suits below by providing the case number, the style, and the disposition of each case: **No**.

IV.   Parties: in part A of this section, indicate your full name in the first blank and your full mailing address in the second blank.   D9o the same for each additional Plaintiff named in the Complaint (if any) in part B of this section:

A.   Name of Plaintiff: <u>Edmond A Wilson # 769174</u>

Mailing address:   <u>Union Correctional Institution</u>
<u>P.O. Box 1000</u>
<u>Raiford, Florida 32083</u>

B. Additional Plaintiff: <u>NA</u>

In part C of this section, indicate the full name of the first named Defendant. Also, fill in his or her mailing address, position, and where he or she is employed.   For any additional Defendants, use pars D through G of this section for the names, addresses positions and places of employment:

C.   Defendant:                   <u>Centurion of Florida LLC</u>
<u>Rumberger, Kirk, Caldwell, P.A.</u>
<u>300 S. Orange Ave</u>
<u>Suite 1400</u>
<u>Orlando, Florida 32801</u>

Position:                  <u>Health Care Provider:</u>

Employed at:            <u>Florida Department of Corrections, (FDC)</u>

D.   Defendant:             <u>Corizon LLC</u>
Mailing Address        <u>Toomey Law Firm LLC</u>
<u>Old Robb- Stucky Building</u>
<u>1625 Hendry Street Ste. 203</u>

**4**

|  |  |  |
|---|---|---|
|  |  | Fort, Myers, Florida 33901 |
|  | Position: | Previous Health Care Provider |
|  | Employed at: | Florida Department of Corrections |
| E. | Defendant: | Dr. Erron Campbell. |
|  | Mailing Address | Rumberger, Kirk, Caldwell, P.A.<br>300 S. Orange Ave., Suite 1400<br>Orlando, Florida 32801 |
|  | Position: | Regional Medical Director, (Region Two) |
|  | Employed at: | Florida Department of Corrections |
| F. | Defendant: | Dr. E Perez-Lugo |
|  | Mailing Address | Rumberger, Kirk, Caldwell, P.A.<br>300 S. Orange Ave., Suite 1400<br>Orlando, Florida 32801 |
|  | Position: | Chief Health Care Officer U.C.I. |
|  | Employed at: | FDC/CENTURION of Florida LLC |

**5**

G.   Defendant:                  Mark S. Inch

      Mailing Address            Florida Dept. of Corrections
                                 501 S. Calhoun Street
                                 Tallahassee, Florida 32399

      Position:                  Secretary of Florida Dept. Corrections

      Employed at:               Florida Dept. of Corrections

V.   STATEMENT OF CLAIM:  State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific.  If you intend to allege a number of related claims, set forth each claim in a separate paragraph.  **Any claim that is not related to the same basic incident or issue must be addressed in a separate Civic Rights Form.**

The Defendants have violated Plaintiff's Eighth and Fourteenth Amendment right of the U.S.  Constitution by their acts of deliberate indifference to the Plaintiff's serious  medical needs.

VI.  STATEMENT OF FACTS: State as briefly as possible the FACTS of your case. Describe how each defendant was involved.  Do not make any legal arguments or cite cases or statutes.  State with as much specificity as possible the facts in the following:

1.   Name and position of person(s) involved.

2.   Date(s)

3.   Plaice(s)

**6**

4.    Fact(s) or event(s) giving rise to your claim, including involvement of each defendant

5.    Nature and extent of injury (i.e., physical injury or how you were harmed by the acts of the defendant(s)

**(1)** Mark S. Inch, the current secretary of the Florida Department of Corrections (FDC) is substituted as the proper party defendant of Julie Jones, the former Secretary of FDC in her official capacity pursuant to Rule 25, Fed. R. Civ. P.

**(2)** As Secretary of the FDC, Ms. Jones intentionally supported and/or crafted policies, customs or practice that delay or deny non-emergency but necessary medical needs.

**(3)** Ms. Jones adopted, supported and/or crafted policies, customs or practice that delay or deny effective medical treatment for inmates for non-medical reasons in purpose to save money.

**(4)** Ms. Jones supported custom or practice that delay or deny or postponement of specialty clinical visits for inmates for non-medical reasons in purpose to save money.

**(5)** Despite having the knowledge of health care provider's history for tight utilization management, which affected the quality of health care proved to prisoners, and also faced critism from government officials, public health advocates, experts, and a large number of legal settlements.  Ms. Jones contracted private health care providers Corizon LLC and Centurion LLC as primary healthcare providers for Florida's prisoners within FDC.

**(6)** Ms. Jones, because of her official or unofficial policy, custom or practice, also her condonment or encouragement of the official or unofficial policy, custom, or

7

practice by the healthcare providers Corizon LLC and Centurion LLC, became the driving force behind the deliberate indifference of Dr. Campbell's delay and denial of the Plaintiff's ENT consult request in 2015 and 2017.

(7) Due to the period of two (2) years delay and denial the Plaintiff's condition the Plaintiff's orbital cellulitisis worsened into the condition of aspergillasis fungal orbital cellulitisis. Causing the Plaintiff to suffer fungal colonization on the skull, bone erosion, a spreading infection, pain, swelling, a metallic plate placement, sever proptosis, poor vision, permanent disfigurement, and emotional stress.

(8) Through research the Plaintiff discovered that it has been reported by the Department of Ophthalmology, University of Illinois at Chicago College of Medicine that fungal orbital cellulitisis have a high mortally rate…

(9) Plaintiff entered Florida Department of Corrections (FDC) December 18. 2004. Prior to the Plaintiff's conviction there was no prior history of Plaintiff being diagnosed with any medical sinus issues.

(10) While being incarcerated as Swanee Correctional Institution in 2012, the Plaintiff reported to medical sick-call a number different timed complaining of chronic headaches, watery eyes, sneezing and runny nose. X-rays were ordered and taken, whereupon the Plaintiff was told that he was suffering from mold and grass allergies. Plaintiff was prescribed Nasacort Nasal Spray.

(11) Plaintiff arrived at U.C.I. July 25, 2014. Plaintiff upon arrival informed medical staff at the initial intake physical exam, that while Plaintiff was at Suwannee Correctional Institution, Plaintiff was diagnosed with Chronic Sinusitis.

8

**(12)**   All of Plaintiff's previous prescribed medications of ibuprofen, Saline Solution Spray, (CPM), also, Nasacort NSAL Spray were re-prescribed.  Whereas, Plaintiff informed the intake medical nurse that the existing prescribed medication were of very little help.

**(13)**   Plaintiff chronic sinusitis symptoms progressed.  In May 2015, Plaintiff filed an institutional sick-call request seeking help.  Breathing treatment, three (3) times a day were prescribed.

**(14)**   On July 31, 2015 Plaintiff filed another institutional sick-call request acknowledging having breathing problems, requesting to see a doctor because of severe pain in the upper part of Plaintiff's nasal passage.

**(15)**   The attending nurse placed Plaintiff on call-our listing to be examines by Dr. E. Perez, who only re-wrote the already existing prescriptions.

**(16)**   The Plaintiff continued submitting institutional sick-call request informing the medical staff at U.C.I of the severe breathing problems Plaintiff was experiencing.

**(17)**   On August 31, 2015 Plaintiff was again examined by Dr. Perez who again rewrote the same existing medical prescriptions and a consult, requesting for the Plaintiff to be examined by the Ear, Nose and Throat (ENT) Specialist at North Florida Reception Medical Center (NFRMC).

**(18)**   Dr. Perez's consult request was denied by Dr. Erron Campbell, the Regional Medical Director who order that the Plaintiff be continued on the prescribed ATP.  Dr. Perez did not appeal or request a CT scan or MRI in support of Plaintiff's ENT consult request of Dr. Campbell's decision or for second opinion from the Director of Medical Care Services for FDC or, the Chief Medical Director for FDC.

**(19)**   The Plaintiff throughout 2016 wrote numerous more institutional inmate sick-call request to the medical staff at U.C.I. detailing the symptoms, concerns even begging to be examined by a specialist.

**(20)**   At one point the Plaintiff was told by institutional medical burse P. Shifflet she would not place the Plaintiff's name on call-out to be seen by the doctor again because 'there's nothing more medical can do"   There would be no other treatment other than the prescribed ATP.

**(21)**   In 2017, Corizon Health LLC, was no longer the Health Care Provider for FDC.  By contract Centurion LLC of Florida held duty as the primary Health Care Provider for FDC.

**(22)** Plaintiff asserts that former Secretary Ms. Jones and healthcare provider Centurion, crafted, or adopted and continued to follow the unconstitutional policy, custom or practice of Centurion's predecessor, Corizon LLC, that failed to clearly define and instruct their employees for what 'medical,' and 'non-medical reasons should an inmate" request for specialty clinic consultation be delayed or denied.

**10**

When the consultation is requested in the best interest to adequately diagnose and provide care for an inmates serious medical need.

**(23)**   Plaintiff filed another institutional inmate sick-call request seeking medical attention.   Plaintiff's symptoms and condition has became so sever, Plaintiff's entire face was swollen, especially its right side and Plaintiff's right eye was beginning to bulge and protrude from his socket.   Other inmates started to ridicule the Plaintiff by calling the Plaintiff Pop Eye, Fish and other demeaning names.   Some inmates accused the Plaintiff of having Aids.   The plaintiff had also lost all sense of smell and taste.

**(24)**   Dr. Perez immediately wrote another consult requesting for the Plaintiff to be examined and evaluated by NRRMC by the ENT specialist.

**(25)**   Dr. Campbell, Regional Director for FDC, for the second time denied Dr. Perez consult request.   Dr. Perez did not appeal the second denial by Dr. Campbell.

**(26)**   Dr. Perez informed the Plaintiff of Dr. Campbell's denial and that Dr. Campbell ordered the Plaintiff be continued with the prescribed ATP because Dr. Campbell felt this managed the Plaintiff's condition.

**(27)**   Dr. Polo, a member of the medical staff at U.C.I. examined the Plaintiff in March or April 2017.   Plaintiff assumes this was because Dr. Perez was not present and that Dr. Polo had taken his place for the day.

**(28)**   Because the Plaintiff's condition and symptoms upon his initial examination Dr. Polo ordered that an ultrasound be done.   The results indicated that a large mass was behind the Plaintiff's right eye.

**11**

**(29)** Following this discovery Dr. Polo ordered a series of computerized Azial Tomography (CT) scan on May 12, 2017, and Magnetic Resonance Imaging (MRI) on June 1, 2017 and August 23, 2017 be done to affirm the ultrasound's indication that a large mass had developed behind the Plaintiff's right eye.

**(30)** The results of the CT and MRI shows [05/12/2017], extensive changes within the paranasal sinuses and orbits, consistent with either rather aggressive inflammatory or neoplastic process.   [06/01/2017], no evidence of acute intra pathology.   Extensive inflammatory changes are incidentally noted with the visualized paranasal and left mastoid sinuses. [08/23/2017], there is extensive soft tissue involving the frontal, ethmoidal, maxillary, and sphenoid.   Extension of the soft tissue from the right frontal sinus into the superior right orbit affecting the superior rectus muscle.   This raises suspicion for underlying invasive infection such as aspergillasis fungi, sinusitis or other entities.

**(31)** Plaintiff's CT and MRI radiology interpretations were provided b SM2, Schryver Medical, LLC, and then the significant findings were provided to Dr. Polo.

**(32)** Dr. Polo submitted a third consult request for the Plaintiff to be examined by the ENT at NFRMC, Whereupon Dr. Polo request for ENT consultation was granted by Dr. Campbell, more than two and a half (2½) years after the Plaintiff first complained to the medical staff at U.C.I. expressing serious need for effectual medical attention and treatment before aspergillasis fungal orbital cellulitisis developed within this period of time.

**(33)** Following the CT and MRI radiology results.   ENT Joseph Fares MD examined the Plaintiff at NFRMC.   Following Dr. Fare's initial exam along with radiology interpretations, concluded that the Plaintiff was in need of immediate

**12**

decompression, polyps removal from nasal passages, also another MRI to examine if the polyps were cancerous.

(34)  It was explained to the Plaintiff by Dr. Fares, "there are sever polyps development which needs to be removed and decompression is also necessary."

(35)  In June 2017, Plaintiff was transported from UCI to Jacksonville Memorial Hospital for the first of a series of polyp and decompression procedures. The transported to NFRMC for fifteen (15) days for IV antibiotic treatments for severe orbital and sinus infection.

(36)  The Plaintiff continued for an extended period of months with severe symptoms of pain, swelling, and right eye protruding, also vision problems.

(37)  October 2017, Plaintiff declared a medical emergency with U.C.I's medical staff due to the intense pain and swelling.  Plaintiff was taken to Urgent Care at the Institution where it was decided Plaintiff should immediately be transported to Jacksonville Memorial Hospital, where decompression treatment procedures were done.  On October 29, 2017 Plaintiff was again taken to Jacksonville Memorial under emergency circumstances, due to extremely severe pain.  It was determines upon examination the Plaintiff had developed and abscess under the right eyelid.  The Plaintiff was given a shot of ibuprofen for pain relief, whereupon because of the medicine 'Motrin' within ibuprofen the Plaintiff suffered a 'severe' asthma attack, causing a **coded alert** to be given.

(38)  On December 15, 20017, Plaintiff again was transported to Jacksonville Memorial Hospital for polyp removal and decompression procedure.  Followed by fifteen (15) days of IV antibiotic treatment for infections at NFRMC.

(39)  While examining the Plaintiff on February 14, 2018 Dr. Fares expressed to Plaintiff, "you're going to need surgery."

**13**

(40)   On March 20, **2018 Plaintiff went to medical because o extreme pain and swelling, especially on the right side of the face.   Plaintiff's right eye was protruding severely; it looked to be falling from its socket.   Plaintiff's nasal passages were completely blocked; Plaintiff could only gasp for breath through his mouth.**   Dr. E. Toledo, on the medical staff at U.C.I. examined the Plaintiff stating, 'you have severe Orbital Cellulites.   Immediately the Plaintiff was transported to Jacksonville Memorial Hospital where Dr. Fares performed polyps removal and decompression procedures, then ordering IV antibiotics treatment.

(41)   In March 2018, Dr. Fares performed cosmetic nose surgery by re-setting the Plaintiff's nose so that the Plaintiff could breathe easier.

(42)   While still at Jacksonville Memorial Hospital Dr. Herman R. Chang, a colleague of Dr. Fares examined the previously taken CT and MRI radiology interpretations, also examined the Plaintiff.   He informed the Plaintiff, "You have a lot of complications associated with this."   There are polyps, and invasive fungal infection, sinusitis, bone destruction around the right orbit, and an abscess, which must be removed immediately.   '**They're looking at cost efficiency,**' whereas, at this point surgery is necessary.   You will need to have the required surgery at U.F. Shands Hospital.'

(43)   However, Dr. Chang wrote in his summery discharge report, dated 03/26/18: original plan was to have patient sent to U.F. Shands for removal of frontal sinus mass also from orbit... Dr. Fares postponed the surgery and will treat with conservative measures...

(44)   The Plaintiff was continued on the prescribed ATP. Then in September 2018 Plaintiff was transported to NFRMC for follow-up examination by Dr. Fares. Immediately Dr. Fares noticed the Plaintiff symptoms of severe redness and swelling

14

around the right eye, also the Plaintiff's right eye was extremely protruding from the socket. After examining the Plaintiff, Dr. Fares requested Plaintiff sign consultation request for emergency surgery. Dr. Fares further explained that he as a medical doctor was not qualified for performing the required surgery that another ENT would be responsible for performing the necessary operation.

(45)    The following day the Plaintiff was transported from UCI back to Jacksonville Memorial Hospital where Dr. Fares again expressed to the Plaintiff, he would not perform the required surgery,' that you should have been taken to U.F. Shands.'

(46)    On September 14, 2018, Dr. Iman, Naseri MD was consulted for surgical intervention. Plaintiff was taken to the OR at Jacksonville Memorial Hospital for modified brow osteotomy right frontal for evacuation of abscess and reconstruction of skull base defect, along with drainage of supseroribital abscess collection…

(47)    Dr Naseri's pre-procedure diagnosis were authored: as allegoric fungal pansinusitis, bilateral nasal airway obstruction, right periorbital celuitis, proptosis, anosmia, visual defect fight eye.

(48)    Dr. Naseri's operative findings of Plaintiff: Significant sinonasal polyposis and focal findings of allergic fungal muffin, erosion of anterior skull base, no CSF leak or meningocele, erosion of superior orbital bone into floor of frontal sinus, thinning of small portion of posterior table but no dural exposure. All polyposis evacuated and established patency of all paranasal sinuses.

(49)    Dr. E. Toledo conducted Plaintiff post-surgery follow-up examination. A CT scan was requested. The radiology report conclusion dated 5-23-2019 indicated, 'Right orbital proptosis is related to deformity of the floor of the right frontal sinus. Frontal sinus floor bows inferiority and has numerous defects through its substance.

**15**

No inflammatory stranding or absences within the retro-orbital tissues, no evidence of orbital celluitis.

**(50)**  In the Defendant's conscious decision to reduce cost for the treatment of the Plaintiff's serious medical needs.  Dr. E. Perez-Lugo, and Dr. Erron Campbell continued prescribing ATP for more than two (2) years, being aware by the worsening of the exiting symptom that the proscribed ATP did not provide an effective desired result.  Thus, causing imminent danger of serious physical injury to the Plaintiff.

**(51)**  The Defendants Mark S. Inch, Corizon LLC, Centurion of Florida LLC, Dr. E. Perez-Lugo, and Dr. Erron Campbell, Region Medical Director deliberate indifference of denial, delay, and inadequate treatment for non-medical reasons caused the Plaintiff pain, swelling, spreading infection, fungal colonization, bone erosion, severe proptosis and permanent disfigurement and emotional stress in violation of the Eight and Fourteenth Amendments of the United States Constitution.

VI.    RELIEF REQUESTED:  State briefly what you want the Court to do for you. Again, do not make any legal arguments or cite any case or statutes.

1) A judgment declaring that the Defendant's has exhibited deliberate indifference to the serious medical needs of the Plaintiff also in violation of the Plaintiff's right to be free from Cruel and Unusual Punishment, as secured by the Eighth and Fourteenth Amendments of the U.S. Constitution.

**16**

## COMPENSATORY DAMAGES

2)  Plaintiff seeks compensatory damages in the amount of $50,000 dollars from each Defendant jointly and severely for great physical pain, suffering and discomfort and mental anguish.

## PINITIVE DAMAGES

3) Plaintiff seeks punitive damages in the amount of $200,000 from all Defendants in jointly and severely for the intentional denial of and delay, great physical pain, suffering and discomfort and mental anguish.

## COST OF LIGIGATION

4) Plaintiff seeks attorneys fees, cost and litigation expenses.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Signed this _1st_ day of _SEPT_ _____ 2020.     _Edmond A. Wilson_
                                                     Edmond A. Wilson

## IF MAILED BY PRISONER:

I declare (of certify, verify, or affirm) under the penalty of perjury that this complaint was (check one): [X] delivered to prison officials for mailing or [ ] deposited in the prison's internal on the _1st_ day of _SEPT_ , 2020.   x _Edmond A. Wilson_
                                                     Edmond A. Wilson

**17**

FILED

2020 SEP -2 PM 12:37

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RECIEVED
UNION CORRECTIONAL INSTITUTION

SEP 0 1 2020

BY:
FOR MAILING

EDMOND A. WILSON, JR.,
Plaintiff

v.                                                          Case No.: 3:20-cv-114-J-20JBT

DR. ERRON CAMPBELL, et al
Defendants
_____/

PLAINTIFF'S AMENDED COMPLAINT
AND DIRECTIVE

COMES NOW, Plaintiff Edmond A Wilson, Jr., pro se, pursuant this Court ORDER ON August 13,2020, that GRANTED Plaintiff until September 17, 2020, leave to file Amended Complaint.

The amended portions of the Amended Complaint are as follows: (See Attached Amendment Complaint).

1.) **MARK S. INCH, Secretary, Florida Department of Corrections, Defendant**

SECTION : **III-5**
SECTION: **IV- C, D, E, F, and G**
SECTION: **VI, PARAGRAPH- 1, 2, 3, 4, 5, 6, 7, 8, 18, 22, 29, 31, 32, 46, 50 and 51**
SECTION: **VI. RELIEF REQUESTED- 1), 2) and 3).**

**Page 1 of 2**

*SEPT 1st 2020*
**Date**

Respectfully Submitted

X *Edmond A Wilson*

EDMOND A. WILSON

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing

Plaintiff's Amended Complaint and Directive has been furnished by U.S. mail

on this *1st* day of *SEPT* 2020 to:

The Toomey Law Firm
The Old Robb/Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, Florida 33901
Attorneys for Defendants: Corizon LLC and Dr. E. Perez-Lugo

And

Rumberger, Kirk, and Caldwell, P.A.
300 South Orange Ave.. Suite 1400
Orlando, Florida 32801
Attorneys for Defendants: Dr. Erron Campbell, Dr. E. Perez-Lugo.

*SEPT 1st 2020*
DATE

*Edmond A Wilson*

EDMOND A. WILSON
#769174
Union C.I.
P.O. Box 1000
Raiford, Florida 32083

**Page 2 of 2**